Filed 6/26/24  In re Ezekiel A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re EZEKIEL A., a Person Coming Under the Juvenile Court Law. | B328987 (Los Angeles County Super. Ct. No. 22CCJP02783A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. B.A., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cathy J. Ostiller, Judge.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.     INTRODUCTION

B.A. (mother) appeals from the juvenile court's entry of an exit order, pursuant to Welfare and Institutions Code section 362.4[1], which required that mother's visits with her child Ezekiel A. (the child, born in November 2021) be monitored.  Finding no abuse of discretion, we affirm.

## II.     BACKGROUND

A.     *Jurisdiction and Case Plan*

On July 19, 2022, the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition, which alleged, as later amended, that mother "has mental and emotional problems including depression, self-harming behaviors, aggressive and assaultive behaviors which render [her] unable to provide regular care for the child. . . .  Such mental and emotional problems on the part of . . . mother endanger the child's physical health and safety and place the

_____

[1]     Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

child at risk of serious physical harm, damage and danger." (*In re Ezekiel A.* (Dec. 27, 2023, B323378) [nonpub. opn.].)[2]

On September 2, 2022, the juvenile court sustained the section 300 petition and ordered the child removed from mother's custody and placed with father, who resided in Texas. (*In re Ezekiel A., supra*, B323378.) The court granted mother monitored visitation with the child, but ordered that, as part of her case plan, mother participate in: a parenting program; mental health counseling, with a psychological assessment, a psychiatric evaluation, and to take all prescribed psychotropic medications; and individual counseling to address case issues, child safety, domestic violence, and anger management.

B.    *Reunification Services*

On August 14, 2022, mother completed a mental health screening. The screening assessor recited that mother had a history of self-harm and suffered from traumatic brain injury, adjustment disorder with anxiety, relationship distress with a spouse or intimate partner. Mother claimed that she had not recently engaged in self-harm, but the assessor observed what appeared to be fresh cuts on mother's arm.

On August 30, 2022, mother began biweekly individual counseling at Heredia Therapy Group (Heredia). On

---

[2]    We take judicial notice of the record filed in the prior appeal, as well as our opinion. (Evid. Code, §§ 452, subd. (d), 459.) On December 27, 2023, we affirmed the juvenile court's jurisdictional and dispositional orders. (*In re Ezekiel A., supra*, B323378.)

3

November 8, 2022, Nancy Bumrich[3], who was employed by Heredia, reported that counseling had been terminated when mother threatened an employee. Moreover, according to Bumrich, mother required a higher level of care than Heredia was able to provide.

In October 2022, mother relocated to Texas in order to participate in in-person visits with the child. On October 17, 2022, a Texas social worker smelled marijuana when mother opened her car door. When asked about the odor, mother said, "'so what, it is not illegal'" and admitted to "'hot box[ing]'"[4] her car. She refused to submit to drug-testing as it was not part of her case plan.

On November 14, 2022, a Texas social worker reported that mother was "'disassociated'" during her visit with the child and did not engage with the child. At the end of the visit, mother stated, "'this is the reason why people shoot things up.'" The Texas social worker could not determine whether mother's behavior was the result of her being under the influence of drugs or if she was having a mental health episode.

On November 30, 2022, during a telephone call with a social worker, mother "repeatedly laughed and giggled" and audibly inhaled from an item, which caused her to cough several times. Mother told the social worker that she had been advised

---

[3]     The record does not reflect Bumrich's title at Heredia.

[4]     In context, we assume that "hot box" meant that mother would close the windows in her car while she smoked marijuana. (See <https://dictionary.cambridge.org/us/dictionary/english/hot-box> [as of June 25, 2024, "to fill a small room space with smoke from something, especially an illegal drug, in order to be able to breathe it in"], archived at <https://perma.cc/2WHF-EF4R>.)

4

by a doctor at Kaiser in California that the child had a kidney issue. According to mother, the doctor directed mother to report father for child abuse. Following this statement, mother began to laugh.

On that same date, the social worker spoke with Dr. Carol Ishimatsu of Kaiser, who reported that she was concerned about the child's safety if he were to be placed in mother's care without a monitor. Dr. Ishimatsu had received a call from mother, who, during the telephone conversation, slurred her words and laughed excessively. The doctor had a difficult time explaining the child's kidney condition to mother, who could not stay on topic. Mother repeatedly asked if the doctor would write a letter regarding the child's condition to father. The doctor responded that she would discuss the child's care with father. When Dr. Ishimatsu advised mother that the child's condition was a common one that just needed monitoring, mother became irate, threatened to call the news, and claimed that father was not caring for the child properly.

By February 16, 2023, mother completed the parenting class. Mother told the social worker that she used marijuana and had experienced several car accidents while living in Texas, including one that resulted in the total loss of her car. Mother no longer wished to live in Texas because of its restrictions on marijuana use. The Texas caseworker reported hearing from other employees of mother's former employer that mother had been fired from her job because she attempted to assault her employer. Mother, however, denied the allegation.

In December 2022, mother began in-person visitations with the child, which were monitored by Family Service through its KidShare program. A manager at Family Service reported that

she had concerns about mother's mental health. Mother continued to take "investigative photographs," left the room during visits, and spent her allotted time during the visits speaking to the monitor about mother's case issues, work, and father. Further, mother continuously reported that the child had a diaper rash, when the monitor observed that he did not.

On January 18, 2023, mother began individual counseling with Family Service, and by April 10, 2023, she had participated in 10 two-hour sessions.

As of February 17, 2023, mother had not provided proof of participation in the court-ordered psychiatric evaluation.

On March 13, 2023, mother informed the Department that she did not want to continue monitored visits at Family Service. The manager of Family Service opined that mother had the mentality of a 13- or 14-year old and recommended that visitation remain monitored in light of mother's unaddressed mental health problems.

C.    *Termination of Jurisdiction and Exit Order*

At the section 364 hearing on April 12, 2023, mother's counsel requested that the child be placed with mother. Alternatively, mother's counsel asked for unmonitored visits. The Department's counsel requested that father be granted sole physical custody and that the parents be granted joint legal custody, with monitored visitation for mother. Father's counsel agreed with the Department's recommendation, but also requested tie-breaking authority as to legal custody.

Following argument, the juvenile court terminated jurisdiction and ordered joint legal custody of the child, with

father to have sole physical custody and tie-breaking authority as to legal custody. The court granted mother monitored visits for three days per week, three hours per day.

On April 19, 2023, the juvenile court issued the custody order. The court found that supervised visitation was appropriate because mother "ha[d] not made substantial progress in" her "[i]ndividual counseling, , , , [p]sychological evaluation [*sic*], psychiatric evaluation and [t]ake all medication as prescribed." Mother timely appealed.

## III.   DISCUSSION

A.   *Legal Principles*

"Section 362.4 governs the termination of juvenile court jurisdiction and related orders. The statute authorizes a juvenile court to make 'exit orders' regarding custody and visitation upon terminating dependency jurisdiction over a child. (See § 362.4, subd. (a); *In re Chantal S.* (1996) 13 Cal.4th 196, 203; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.) These exit orders remain in effect until modified or terminated by a subsequent order of the superior court. (§ 362.4, subd. (b); see also Cal. Rules of Court, rule 5.700.)

"'[I]n making exit orders, the juvenile court must look at the best interests of the child.' (*In re John W.* (1996) 41 Cal.App.4th 961, 973; see also *In re T.S.* (2020) 52 Cal.App.5th 503, 513 . . . ['When making a custody determination under section 362.4, "the court's focus and primary consideration must always be the best interests of the child[ ]"'], quoting *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 (*Nicholas H.*).) The

7

court must be guided by the totality of the circumstances and issue orders that are in the child's best interests.  (*In re Chantal S., supra*, 13 Cal.4th at p. 201; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31.)  Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. . . .  Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 (*Jennifer R.*); accord, [*In re*] *Chantal S., supra*, 13 Cal.4th at p. 206.)

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).' (*Nicholas H., supra*, 112 Cal.App.4th at p. 265, fn. 4.)  We review the juvenile court's exit orders for an abuse of that discretion.  (See, e.g., *In re Maya L.* (2014) 232 Cal.App.4th 81, 102; *Jennifer R., supra*, 14 Cal.App.4th at p. 711; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112–113.)

B.   *Analysis*

Citing the juvenile court's failure to expressly state that the exit order was in the child's best interest, mother asserts that the juvenile court did not consider the child's best interest and therefore misapplied the law.  We reject the contention because "[i]n the absence of any evidence to the contrary, we presume the court is aware of and complies with the law." (*In re Jonathan*

*C.M.* (2023) 91 Cal.App.5th 1039, 1047; see also *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 561, fn. 13 [listing cases that "have rejected claims of error based upon the trial court's failure to recite particular 'magic words'"].)

Mother also argues there was insufficient evidence to support a finding that she was not making substantial progress with individual counseling, a rationale the juvenile court cited in support of its order for monitored visits. As an initial matter, we review the court's rulings, not its reasoning. (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.) And the ruling challenged on appeal is the order requiring that mother's visits be monitored.

In any event, substantial evidence supports the juvenile court's findings that at the time jurisdiction was terminated, mother had not made substantial progress on her individual counseling. Mother did not participate in individual counseling from November 8, 2022, when she was terminated from the counseling program at Heredia, to January 14, 2023, when she began individual counseling with Family Service. Thus, during two and a half of the seven months that elapsed between the court's ordering of a case plan and its termination of jurisdiction, mother did not participate in individual therapy. Moreover, she never participated in a psychiatric evaluation. Substantial evidence therefore supports the court's finding that mother did not make substantial progress in her case plan.

Finally, we consider mother's contention that the juvenile court abused its discretion by finding that the child's visits should be monitored. We find no abuse of discretion. Numerous professionals who interacted with mother opined that the child would not be safe in mother's unsupervised care. The assessor who completed mother's August 2022 mental health screening

expressed concerns over mother's ability to parent and keep the child safe.  Dr. Ishimatsu of Kaiser also expressed concerns over the child's safety if he were to be placed in mother's unmonitored care.  Finally, the monitor at Family Service opined that mother's unaddressed mental health problems required that her visits with the child remain monitored.

Further, mother continued to engage in conduct that demonstrated the child, who was 17 months old at the time jurisdiction was terminated, would not be safe in her unmonitored care.  She threatened an employee at Heredia and was terminated from a job for attempting to assault her supervisor.  At the end of a visit with the child, mother told a Texas social worker that "this is the reason why people shoot things up."  She had also been involved in numerous car accidents.  On this record, we find no abuse of discretion.[5]

---

[5]     Mother devotes the bulk of her opening brief to a detailed challenge of the juvenile court's weighing of the evidence before it.  But, as an appellate court "'"[w]e do not reweigh the evidence or exercise independent judgment, [and instead] merely determine if there are sufficient facts to support the findings of the trial court.  [Citations.]"'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

## IV.   DISPOSITION

The visitation order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

LEE, J.*

---

\*      Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11